**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF HUMAN SERVICES, Appellant/Petitioner**

**v.**

**UNITED INDUSTRIAL, SERVICE, TRANSPORTATION, PROFESSIONAL AND GOVERNMENT WORKERS OF NORTH AMERICA - SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC, GULF, LAKES AND INLAND WATERS, ON BEHALF OF MARIE DANIELSON, Appellee/Respondent**

S. Ct. Civil No. 2015-0060

Supreme Court of the Virgin Islands

January 13, 2016

313

CHIVONNE A. S. THOMAS-JONES, ESQ., Assistant Attorney General, St. Croix, USVI, *Attorney for Appellant*.

NAMOSHA BOYKIN, ESQ., PEDRO K. WILLIAMS, ESQ., Law Office of Pedro K. Williams, St. Thomas, USVI, *Attorneys for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(January 13, 2016)

HODGE, *Chief Justice*. The Department of Human Services ("DHS") appeals from the Superior Court's May 20, 2015 opinion, which denied its request to vacate an arbitrator's award directing that Marie Danielson, a DHS employee, receive $101,775.96 in back pay. For the reasons that follow, we reverse.

## I. BACKGROUND

The facts of this case are largely undisputed. In 1995, the DHS hired Danielson to serve as a corrections officer in the Youth Rehabilitation Center on St. Croix ("YRC"). While working in that capacity on January 18, 2000, Danielson slipped on water that had accumulated on the floor, resulting in an injury to her hand. At the time of her injury, Danielson earned $455.60 per week. Although Danielson initially continued to report to work, her injury worsened, and she left work on sick leave on February 27, 2000. Through May 20, 2000, Danielson continued to receive full pay from the DHS pursuant to section 584a of title 3 of the Virgin Islands Code, which provides, in pertinent part, that "[a]ny employee of the Government of the United States Virgin Islands who is unable to work due to an injury which may be compensable under the

314

Virgin Islands Workers' Compensation Administration Law, may elect to continue to receive his full wages for a period of time not exceeding his accumulated leave time," with the accumulated leave time to be reinstated "[i]n the event that the Commissioner of Labor awards disability compensation payments for this injury for the period of time." 3 V.I.C. § 584a(b).

On April 25, 2000, Danielson filed a disability claim with the Division of Workers' Compensation in the Department of Labor, and approximately a week later filed an "Employee's Notice of Injury" stating that she was suffering from "severe pain on [the] right side of [her] neck, shoulder, arm, and wrist," including "[s]welling of all (5) fingers." The Division of Workers' Compensation issued an order on July 25, 2000, which concluded that Danielson had become disabled as a result of a job-related injury, ordered that her sick leave be reinstated, and awarded her workers' compensation benefits in the amount of $303.73 per workweek. However, Danielson stopped receiving workers' compensation benefits in January 2002. When she inquired of both the DHS and the Division of Workers' Compensation as to why her payments had stopped, each agency laid blame on the other.

On September 9, 2004 — more than two years after she received her final workers compensation payment — the United Industrial, Service, Transportation, Professional and Government Workers of North America - Seafarers International Union of North America, Atlantic, Gulf, Lakes and Inland Waters District (the "Union") filed a grievance on Danielson's behalf under the procedures set forth in a collective bargaining agreement between the DHS and its corrections officers. The grievance requested that Danielson "receive all compensation due to her retroactive to May 6, 2000," and "[t]hat the Department restore all sick leave and annual leave with all rights, benefits, privileges and that she be made whole in every way." According to the grievance, the DHS had breached Article VI, Section 10 of the collective bargaining agreement, which provided that "[d]isability compensation shall be awarded in accordance with provision of Title 3, V.I. Code, § 584a, b, c, d," as well as Article XX, Section 1, which provided that "[a]ll employees shall be entitled to all the rights, benefits and privileges of 'career' or 'classified' employees as that term is defined in [the] V.I. Code." The Union then filed a demand for arbitration on September 24, 2004.

At the time the Union filed its grievance, section 584(d) provided, in pertinent part, that

> Notwithstanding any other provisions of this Code, any member of the police force, any member of the Virgin Islands Fire Service, any corrections officer, including any corrections officer employed by the Department of Human Services, firemen of the Virgin Islands Port Authority, probation officer of the Superior Court or civilian employee of the Bureau of Corrections, any Marshal of the Superior Court, and any volunteer fireman or Virgin Islands Territorial Emergency Management Agency worker who is a government employee, who, through no fault or misconduct on his part, is disabled by injuries received in the discharge of his duties as a policeman, fireman, corrections officer, including any corrections officer employed by the Department of Human Services, firemen of the Virgin Islands Port Authority, probation officer of the Superior Court or civilian employee of the Bureau of Corrections, marshal, volunteer fireman or Virgin Islands Territorial Emergency Management Agency worker; or who, as a result of illness attributable to such duties, shall, upon recommendation of the Police Commissioner, the Director of the Virgin Islands Fire Service, the Director of the Bureau of Corrections, the Commissioner of Human Services, or the Presiding Judge of the Superior Court, whichever is applicable, and when certified by a duly licensed physician or physicians designated by said Commissioner, Director or Presiding Judge, stating that said policeman, fireman, corrections officer, including any corrections officer employed by the Department of Human Services, firemen of the Virgin Islands Port Authority, probation officer of the Superior Court or civilian employee of the Bureau of Corrections, marshal, volunteer fireman or Virgin Islands Territorial Emergency Management Agency worker is physically or mentally incapacitated for the performance of his police, fire, corrections or marshal duty, or other duty in the case of a volunteer fireman or Virgin Islands Territorial Emergency Management Agency worker, be paid the full amount of his regular compensation or wages until his disability arising therefrom has ceased . . . .

3 V.I.C. § 584a(d).[1] However, at the time the Division of Workers' Compensation awarded benefits to Danielson, as well as all times prior to that date, the phrase "including any corrections officer employed by the Department of Human Services, firemen of the Virgin Islands Port Authority, probation officer of the Superior Court" had been omitted from the statute; that phrase had only been added effective June 30, 2000, with the passage of Act No. 6353.

On May 18, 2005, the DHS, through its Commissioner, advised Danielson in a letter that she did not receive her full salary during her disability period because she is not covered under section 584(d), since the portion of the statute containing the "any corrections officer employed by the Department of Human Services" language had been "passed after her accident and not amended to be retroactive." The letter, however, did not explain why payment of all workers compensation benefits had ceased in January 2002.

The grievance proceeded to arbitration on December 4 and 5, 2006. In addition to disputing Danielson's claim on the merits, the DHS also contended that the grievance had not been timely filed, since Article IX, Section 5 of the collective bargaining agreement provides that a matter must "first be discussed between the aggrieved employee and the employee's immediate supervisor in the presence of the employee's Shop Steward not later than five (5) working days after its occurrence, or after the employee knew or should have known of the matter complained of," with further steps in the grievance procedure — including submission to arbitration — being triggered by timely completion of that step.

The arbitrator issued a decision on February 25, 2007. In that decision, the arbitrator concluded that the grievance had been timely filed because

> Employees do not know all of their statutory or contractual rights immediately on the spot. If they did, there would be little need for lawyers, arbitrators or judges. Everyone would simply know their legal rights and act accordingly. Real life is very different. Employees go about their business and ask questions of their employer. They are entitled to expect an employer to respond in a reasonable amount of

---

[1] Since then, several other amendments have been made to section 584a to expand the number of employees who are eligible for its protections. These subsequent amendments, however, are not relevant to this appeal.

time. . . . Ms. Danielson was simply caught between the two agencies and sought a definitive answer to her rights from either agency. She got an answer from neither agency until [the DHS Commissioner] set forth the Department's position in her letter of May 18, 2005. Of course this letter came four and [a] half years after the Employer now claims Ms. Danielson should have known that she had five days to file a grievance and eight months after the Union . . . filed the grievance in this case. While Article IX, Section 11 demands that extensions of time limits must be in writing, there has to be some clearly denoted event from which one would reasonably expect the Union or the aggrieved employee to act in measuring their rights or seeking to extend the applicable time limits. In this case there was no such ringing of any bell or, in fact, any hint of a reason whether or why the Department or Division would deny Ms. Danielson her disability benefits under the appropriate statute until May 18, 2005. The dispute is arbitrable.

As to the merits, the arbitrator relied on legislative history to conclude that the omission of the DHS corrections officers from section 584a(d) had been an oversight, and that Danielson was therefore covered under that provision at the time of her injury on January 18, 2000.

Less than three months later, on May 23, 2007, the DHS filed a complaint against the Union in the United States District Court of the Virgin Islands, which sought vacatur of the February 25, 2007 arbitration award. The DHS relied on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, as the basis for the District Court's subject-matter jurisdiction, and asserted that its filing was timely under section 12 of the FAA, which provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. On July 24, 2007, the Union, relying on federal case law standing for the proposition that the FAA "does not supply federal jurisdiction where it does not otherwise exist," *Virgin Islands Housing Auth. v. Coastal General Construction Services, Inc.*, 27 F.3d 911, 30 V.I. 417 (3d Cir. 1994) (citing *Isidor Paiewonsky Assocs., Inc. v. Sharp Properties, Inc.*, 998 F.2d 145, 153 n.8, 28 V.I. 448 (3d Cir. 1994)), filed a motion to dismiss the DHS's complaint for lack of subject matter jurisdiction, asserting that the matter involved a "purely local action" that should have been brought in the Superior Court. (Dist. Ct. Mem. of Law 4-5.) The Union further maintained that the

three-month limitations period found in section 12 of the FAA was inapplicable, and that the DHS complaint was untimely because it should have filed a petition for writ of review under 5 V.I.C. § 1421, which the Union asserted was subject to a 30-day limitations period.

The District Court did not rule on the Union's motion, and instead the parties proceeded with discovery and other preliminary matters. However, on April 30, 2009, the DHS filed a motion to voluntarily dismiss its complaint, in which it stated that it agreed with the Union that the District Court lacked subject-matter jurisdiction and that the Superior Court represented the appropriate forum. On that same day, the DHS initiated a declaratory judgment action in the Superior Court, which requested that the arbitrator's award be vacated. The District Court, in a May 11, 2009 order, granted the DHS's motion, and dismissed its complaint without prejudice. *See Gov't of the V.I. v. Seafarers Int'l Union*, Civ. No. 1:07-cv-00059-RLF-GWC, slip op. at 1 (D.V.I. May 11, 2009) (unpublished).[2]

The Superior Court, in a September 28, 2012 order, noted that the arbitrator failed to calculate the total compensation the DHS owed to Danielson, and remanded the matter for the arbitrator to determine the specific sum. The arbitrator subsequently determined that Danielson was owed $101,775.96, and the matter returned to the Superior Court. In a May 20, 2015 opinion, the Superior Court, employing a very deferential standard of review, refused to disturb the arbitrator's decision. The DHS timely filed its notice of appeal on July 8, 2015. *See* V.I.S.CT.R. 5(a)(1) ("[I]f the Government of the Virgin Islands . . . is a party, the notice of appeal may be filed by any party within 60 days after [entry of judgment].").

## II. DISCUSSION

### A. Appellate Jurisdiction

This Court possesses jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests us with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." *See also* 48 U.S.C. § 1613a(d). Because the

---

[2] Although the parties did not include the District Court record in their joint appendix, this Court may take judicial notice of its existence and its contents. *See Farrell v. People*, 54 V.I. 600, 615-16 (V.I. 2011).

Superior Court's May 20, 2015 opinion resolved all claims between the parties, it is a final judgment within the meaning of section 32(a). *Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566, 578 (V.I. 2012).

## B. Statute of Limitations

In its appellate brief, the Union maintains that the Superior Court lacked subject-matter jurisdiction to consider the Government's challenge to the arbitrator's award, and that this Court should not decide this appeal on the merits, but vacate the underlying judgment, which would have the effect of permitting the arbitration award to stand. The Union recognizes that, under Virgin Islands law, the Superior Court "shall have original jurisdiction in all civil actions regardless of the amount in controversy." 4 V.I.C. § 76(a). However, the Union argues that the FAA "limit[s] the scope of civil actions concerning arbitration awards." In direct contrast to its filing in the District Court, the Union maintains on appeal that this action is governed by section 12 of the FAA and was therefore subject to a three-month statute of limitations. According to the Union, the DHS's Superior Court complaint was untimely because nearly two years passed between the date the arbitrator issued the award and the date the DHS filed its complaint with the Superior Court.

As a threshold matter, the Union has mistakenly couched its argument in jurisdictional language even though it is well-established that the statute of limitations is not jurisdictional. *See Brady v. Cintron*, 55 V.I. 802, 817 n.15 (V.I. 2011). As this Court held in *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 436 (V.I. 2013), "[w]e agree with the appellate courts that have repeatedly held that section 12 of the FAA does not establish a jurisdictional requirement, but operates as a statute of limitations that may be waived by a party's failure to timely assert it." *See, e.g., Fradella v. Petricca*, 183 F.3d 17, 21 (1st Cir. 1999) (describing section 12 as "a statutory limitations period"); *Foster v. Turley*, 808 F.2d 38, 41 (10th Cir. 1986) (the FAA three-month requirement is "in the nature of a statute of limitations, which is subject to waiver"); *Holcim (Texas) Ltd. P'ship v. Humboldt Wedag, Inc.*, 211 S.W.3d 796, 801-02 (Tex. App. 2006) ("[S]ection 12 has been consistently treated as a statute of limitations rather than a jurisdictional prerequisite.") (collecting cases). This is significant because, although a party may raise a jurisdictional issue at any time — even for the first time on appeal — a statute of limitations argument must be timely asserted, failing which it is waived. *Allen*, 59 V.I.

at 436. Here, the record provided to this Court contains no evidence that the Union ever asserted, during the Superior Court proceedings, that the DHS's action to vacate the arbitration award was untimely. Moreover, to the extent the Union raised the argument in a filing that was not included in the joint appendix, we note that Supreme Court Rule 24 imposes a duty on *both* parties to determine the contents of the joint appendix, and that Supreme Court Rule 22 mandates that all briefs "include a designation by reference to specific pages of the appendix or other specific documentation in the proceedings at which each issue on appeal was raised, objected to, and ruled upon." V.I.S.CT.R. 22(a)(3); *see also* V.I.S.CT.R. 22(b) ("The brief of the appellee shall conform to the requirements of paragraph (a)(1)-(6) of this Rule."). Since it does not appear that the Superior Court ever had the opportunity to consider the Union's non-jurisdictional challenge to the timeliness of the DHS complaint, the issue is likely waived for purposes of appeal. *See* V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal.").

██ But even if we were to overlook the Union's failure to comply with our rules, its argument clearly lacks merit. To the extent the FAA even applies to this matter,[3] this Court previously distinguished between the substantive and procedural aspects of the FAA, and concluded that the

---

[3] As this Court has previously explained, "the FAA is premised on Congress's power to regulate interstate commerce — and not Congress's plenary powers under the territorial clause," and thus "a contract comes within the purview of the FAA only when an interstate nexus is shown." *Allen*, 59 V.I. at 442 n.2 (quoting *Gov't of the V.I. v. United Indus. Workers*, 169 F.3d 172, 176, 40 V.I. 489 (3d Cir. 1999)). This interpretation is consistent with how the United States Supreme Court, as well as other state courts of last resort, have interpreted the FAA. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 279-81, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) (holding that the FAA applies only to contracts that "involve interstate commerce" (citation omitted)); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) ("[I]t is clear beyond dispute that the federal arbitration statute is based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.' " (quoting H.R. REP. NO. 96, 68th Cong., 1st Sess., at 1 (1924); S. REP. NO. 536, 68th Cong., 1st Sess., at 3 (1924))); *Jim Parker Bldg. Co. v. G&S Glass & Supply Co.*, 69 So. 3d 124, 133 (Ala. 2011) ("The party seeking to compel arbitration has the initial burden of proving the existence of a written contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce."); *Arkansas Diagnostic Ctr., P.A. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884, 892 (2007) ("We do not interpret the jurisprudence concerning the FAA to include any and every contract" containing an arbitration clause. "[T]he question is simply whether the contract evidences a transaction involving commerce . . . . [I]t is the burden of the party seeking

provisions of the FAA that merely establish procedures in the federal system — such as those pertaining to jurisdiction, or that establish filing deadlines — do not preempt local law. *Allen*, 59 V.I. at 435; *World Fresh Market v. P.D.C.M. Assocs.*, S. Ct. Civ. No. 2011-0051, 2011 V.I. Supreme LEXIS 29, at **6-8 (V.I. Aug. 25, 2011) (unpublished); *see also Toler's Cove Homeowners Ass'n v. Trident Const.*, 355 S.C. 605, 586 S.E.2d 581, 584 (2003) ("There is no federal policy favoring arbitration under a certain set of procedural rules."). Consequently, the three-month limitations period in section 12 of the FAA is inapplicable to this proceeding.[4]

■ The Union further argues that "[e]ven if the FAA's generous three-month statute of limitations were somehow inapplicable . . . the [DHS] identifies no statute that would allow the Superior Court to exercise jurisdiction over an action to vacate an arbitration award more than two years after the award is issued." As noted above, the Union has inaccurately cloaked its statute of limitations argument in jurisdictional language. *See Allen*, 59 V.I. at 436; *Brady*, 55 V.I. at 817 n.15. Although

---

to compel arbitration to prove that the contract at issue involves commerce." (citations omitted)).

In this case, the collective bargaining agreement was executed between a Virgin Islands governmental department and a Virgin Islands union on behalf of workers residing in the Virgin Islands who provide services in Virgin Islands correctional facilities. The Union has presented absolutely no evidence or legal argument to explain how this agreement involves commerce — let alone interstate commerce — or why this Court should overturn its *Allen* precedent or adopt an interpretation of the FAA that is different from the United States Supreme Court. In fact, the Union's failure to discuss *Allen* or the United States Supreme Court's precedents is particularly surprising given that the Superior Court, in its May 20, 2015 opinion, expressly acknowledged that "the FAA only applies in the Superior Court to the extent that an arbitration provision affects interstate commerce." In any event, because the result would remain the same regardless of whether the FAA is applicable to this case, we decline to reach the issue as part of this appeal.

[4] Moreover, even if section 12 of the FAA were applicable to this case, it appears that the DHS complied with its requirements. Although the Union describes section 12 as imposing a statute of limitations, its plain text provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added). Significantly, the statute is silent as to when a motion or action must actually be filed. *See Glaser v. Legg*, 928 F. Supp. 2d 236, 238-39 (D.D.C. 2013) (holding that the date the opposing party is served notice of a motion to vacate an arbitration award, rather than the date the motion is actually filed with a court, is controlling for purposes of compliance with section 12). In this case, the DHS provided the Union with notice within the three-month period when it filed and served its District Court complaint.

it is well-established that a party asserting jurisdiction bears the burden of establishing subject-matter jurisdiction, *see Mendez v. Gov't of the V.I.*, 56 V.I. 194, 204 (V.I. 2012), it is equally well-established that the statute of limitations is an affirmative defense, *see Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536-37 (V.I. 2015) (collecting cases). Consequently, it is the Union — and not the DHS — that bears the burden of identifying an applicable statute of limitations, and producing evidence to demonstrate that it has not been met. *See Maduro v. Am. Airlines, Inc.*, S. Ct. Civ. No. 2007-0029, 2008 V.I. Supreme LEXIS 24, at **8-9 (V.I. Feb. 28, 2008) (unpublished) (holding that the defendant possesses the burden of proving an affirmative defense) (collecting cases); *Campbell v. Grand Trunk Western R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) ("Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run.").

 In any event, under the facts of this case, we would not hesitate to conclude that the DHS timely filed its Superior Court complaint. Because the arbitrator issued his decision on February 25, 2007, and the DHS filed its complaint with the Superior Court on April 30, 2009, its complaint is timely under every potential statute of limitations[5] set forth in 5 V.I.C. § 31 except a one-year statute of limitations — which is plainly inapplicable[6] — or a two-year statute of limitations, which could only apply if an action to set aside an arbitration award were construed as "[a]n action . . . for any injury to the person or rights of another not arising on contract." 5 V.I.C. § 31(5)(A). Even if this statute of limitations were applicable — which we question, given that the arbitrator ordered the DHS

---

[5] In its motion to dismiss the DHS's District Court complaint, the Union maintained that an action to set aside an arbitration award must be brought as a petition for writ of review under 5 V.I.C. § 1421, which permits review of a "decision or determination" made by "any officer, board, commission, authority, or tribunal." This statute, however, contains no limitations period; rather, a 30-day limitations period is set solely by Superior Court Rule 15. Assuming, without deciding, that the Superior Court may permissibly promulgate a rule to establish a limitations period for commencement of an action when none is specifically provided for in a statute, we agree with the United States Court of Appeals for the Third Circuit and the Appellate Division of the United States District Court of the Virgin Islands that a private arbitrator is not an "officer, board, commission, authority, or tribunal" within the meaning of section 1421. *United Indus. Workers*, 169 F.3d at 178; *Gov't of the V.I. v. United Indus. Workers of N. Am.*, 987 F. Supp. 439, 443, 38 V.I. 170 (D.V.I. App. Div. 1997).

[6] A one-year statute of limitations applies to "[a]n action against the sheriff, peace officer, or other officer for the escape of a person arrested or imprisoned on civil process." 5 V.I.C. § 31(6)(A).

to pay money to Danielson only because he concluded that the DHS violated provisions of a collective bargaining agreement between the Union and the DHS — this Court, applying the provisions of 28 U.S.C. § 1367(d), has held that when the United States District Court of the Virgin Islands dismisses a local cause of action for lack of jurisdiction, the statute of limitations is tolled by operation of that statute "while the claim [was] pending [in federal court] and for a period of 30 days after [it is] dismissed," with the potential for even more tolling if certain other requirements are met. *Jensen v. V.I. Water & Power Auth.*, 52 V.I. 435, 441-42 (V.I. 2009) (quoting 28 U.S.C. § 1367(d)); *see also Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218, 44 V.I. 389 (3d Cir. 2002)). Here, the DHS initially filed its complaint with the District Court on May 23, 2007 — less than three months after the arbitrator issued his award — and then voluntarily dismissed that complaint after the Union moved to dismiss it for lack of subject-matter jurisdiction on a theory that the complaint should have been filed in the Superior Court. In fact, the DHS re-filed its complaint in the Superior Court on the same day it agreed to dismiss the District Court action. On this procedural record, the DHS is clearly entitled to tolling of the limitations period during the pendency of the District Court action under *Jensen*. That the DHS voluntarily dismissed its District Court complaint in response to the Union's motion to dismiss for lack of subject-matter jurisdiction, rather than waiting for the District Court to grant the Union's motion, is irrelevant, for to deny tolling in that situation would promote further delay and unnecessarily squander judicial resources. *Accord*, 28 U.S.C. § 1367(d) (extending automatic tolling to "any other claim in the same action that is voluntarily dismissed"). Thus, the Superior Court properly exercised jurisdiction over the DHS action.

## C. Timeliness of the Union's Grievance

In its appellate brief, the DHS does not challenge the merits of the arbitrator's decision to award $101,775.96 to Danielson, including the arbitrator's construction of section 584a(d). Rather, the DHS solely argues that the Union's grievance was not arbitrable under the collective bargaining agreement because it had been untimely filed, and that the matter therefore should never have been arbitrated at all. In its brief, the DHS "submits that an arbitrator's decision on a legal question is subject to *de novo* review." However, the Union — like the Superior Court in its May

20, 2015 opinion — asserts that this Court must apply a highly deferential standard of review to this claim. Specifically, the Union maintains that "courts play only a limited role when asked to review the decision of an arbitrator," and that "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987).

■ We question whether the highly deferential standard proposed by the Union should apply in this case. To support its claim, the Union relies upon a specific provision of the FAA — 9 U.S.C. § 10 — that, by its own terms, only applies to cases in "the *United States court* in and for the district wherein the award was made." (Emphasis added.) As noted earlier, we question whether the FAA applies to this case at all, given that the collective bargaining agreement does not affect commerce and, in any event, is limited solely to the Virgin Islands. *Allen*, 59 V.I. at 442 n.2 (quoting *Gov't of the V.I. v. United Indus. Workers*, 169 F.3d 172, 176, 40 V.I. 489 (3d Cir. 1999)). Moreover, some courts have held that section 10 of the FAA is among the procedural provisions of the FAA that do not apply to state and territorial courts even if an action otherwise comes within the purview of the FAA, unless agreed to in the arbitration agreement. *See Mave Enters., Inc. v. Travelers Indem. Co. of Conn.*, 219 Cal. App. 4th 1408, 162 Cal. Rptr. 3d 671, 688 (2013) (holding that 9 U.S.C. §§ 10 and 11 are not applicable in state court proceedings unless the parties, through their agreement, stipulated to their application); *Int'l Bank of Commerce-Brownsville v. Int'l Energy Dev. Corp.*, 981 S.W.2d 38, 42-43 (Tex. App. 1998) (limiting judicial review of a commercial arbitration award to the provisions of section 10 and 11 as contemplated in an arbitration agreement); *Atlantic Painting & Contracting Inc. v. Nashville Bridge Co.*, 670 S.W.2d 841, 846 (Ky. 1984) ("[T]here is . . . nothing in the [FAA] remotely suggesting that the motion to vacate procedure . . . has any application at all to such state action. . . . The procedural aspects [such as where a party to arbitration seeks to enforce or vacate an arbitration award] are confined to federal cases."); *Hilton Constr. Co. v. Martin Mech. Contractors, Inc.*, 166 Ga. App. 40, 303 S.E.2d 119, 120-21 (applying Georgia law on vacating arbitration awards because 9 U.S.C. § 10 only applies to federal courts), *aff'd on other grounds*, 251 Ga. 701, 308 S.E.2d 830, 832 (1983); *see also* Jill I. Gross, *Over-*

*Preemption of State Vacatur Law: State Courts and the FAA*, 3 J. AM. ARB. 1, 29-33 (2004) (concluding that, "unless the parties' arbitration agreement specifically designates the section 10 grounds as those governing a motion to vacate . . . section 10 . . . do[es] not apply in state courts."); Stephen L. Hayford & Alan R. Palmiter, *Arbitration Federalism: A State Role in Commercial Arbitration*, 54 FLA. L. REV. 175, 195 n.107 (2002) (noting that section 10 is "directed explicitly to federal courts.").

■■ We need not decide whether this deferential standard of review should apply, however, because the arbitrator clearly exceeded his powers under the collective bargaining agreement, 9 U.S.C. § 10(a)(4), to the extent that he imposed his "own brand of industrial justice" rather than attempting to apply the terms of the collective bargaining agreement. *Misco*, 484 U.S. at 36. In *Volt Info. Sciences, Inc. v. Board of Trs.*, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989), the Supreme Court of the United States confirmed that in creating the FAA "Congress' principal purpose [was] ensuring that private arbitration agreements are enforced according to their terms." *Id.* at 478. The Court has expressly held that an arbitrator exceeds his powers, providing grounds for vacating the arbitral decision and award under 9 U.S.C. § 10(a)(4), "when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)). It holds that "[i]n that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671-72, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) (citing *Major League Baseball Players Ass'n.*, 532 U.S. at 509; *Steelworkers*, 363 U.S. at 597). The standard for vacating an agreement was held satisfied, *id.* at 672 n.3, where "the arbitration panel imposed its own policy choice and thus exceeded its powers." *Id.* at 677.

■ Importantly, Article IX of the collective bargaining agreement, which sets forth the grievance and arbitration procedures, provides that it "shall be the exclusive means of settlement of all grievances arising under

this Agreement." Section 7 provides that

> The Arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the express provisions of this Agreement and shall not have the authority to, detract from, or alter its provisions in any way.

As the United States Supreme Court said in *Volt Information Sciences*, "parties are generally free to structure their arbitration agreements as they see fit [and] they may limit by contract the issues which they will arbitrate." 489 U.S. at 479. Section 5, which governs all grievances not related to discharge, suspension, demotion, or violations that affect a large number of employees, mandates a four-step procedure for consideration of grievances. First, a grievance must be initiated "not later than five (5) working days after its occurrence, or after the employee knew or should have known of the matter complained of," so that it can be "discussed between the aggrieved employee and the employee's immediate supervisor."[7] If the supervisor's decision is not acceptable, the second step permits the employee to appeal

---

[7] The collective bargaining agreement sets forth these four steps as follows:

Step 1: The matter will first be discussed between the aggrieved employee and the employee's immediate supervisor in the presence of employee's Shop Steward not later than five (5) working days after its occurrence, or after the employee knew or should have known of the matter complained of. The supervisor shall advise the employee and the employee's Shop Steward of his decision within five (5) working days after the discussion has taken place.

Step 2: If the supervisor's decision is not acceptable to the employee, he or she, within five (5) working days after receiving the answer in Step 1, may appeal the decision by presenting a grievance in writing to the Warden or YRC's Chief Correction Officer on a form which sets forth the facts and circumstances of the alleged grievance, the part of this Agreement alleged to have been violated and the relief sought. The Warden or YRC's Chief Correction Officer or designee shall conduct a hearing within ten (10) working days of receipt of the written grievance. The employee shall have the right to present the grievance or to have the Union present the grievance on the employee's behalf through the Shop Steward or other Union official. Within ten (10) working days after the hearing, the Warden or designee shall render a decision on the grievance and shall advise the Union Representative, the Shop Steward and the employee of his decision in writing.

Step 3: If the decision in Step 2 above is not satisfactory to the Union, the Union within ten (10) days may appeal the decision to the Director of the Bureau of Corrections or Superintendent of YRC who shall conduct a hearing within ten (10) working days and render a decision, in writing, within ten (10) days after the hearing.

the decision to either the Warden or the Chief Correction Officer. If still dissatisfied, the third step authorizes a further appeal to the Superintendent of the Youth Rehabilitation Center or the Director of the Bureau of Corrections. And if the Union is still not satisfied with the outcome, the fourth step permits an appeal to either the DHS Commissioner or the Attorney General. It is only then, "[i]f the final answer in Step 4 above . . . [is] not satisfactory to the Union," that "within ten (10) working days after delivery of the final decision that the Union may file with the Attorney General or the Commissioner of Human Services a written demand for arbitration signed by a Union Representative."

The collective bargaining agreement also establishes the procedure that governs in the event a deadline is missed. Section 11 of Article IX provides that the parties may extend any time limit in writing. In the event such an extension is not obtained and the Union misses a deadline, the agreement expressly provides that "[i]f the Union fails to process a grievance within the time limits provided, the grievance shall be considered disposed of on the final decision of the Attorney General or the Commissioner of Human Services or designee."

Notwithstanding these clear and unambiguous provisions, the arbitrator concluded that receipt of the DHS Commissioner's May 18, 2005 letter represented "[a] clearly denoted event from which one would reasonably expect the Union or the aggrieved employee to act in measuring their rights or seeking to extend the applicable time limits." The fact that the Union actually filed its grievance on September 9, 2004 — nearly a year before the DHS Commissioner sent the May 18, 2005 letter — is conclusive evidence that Danielson and the Union were aware, well before May 18, 2005, that Danielson's rights under the collective bargaining agreement may have been violated. *Accord, McQueen v. United States*, 264 F. Supp. 2d 502, 510 (S.D. Tex. 2003) (holding that asserting a claim a complaint demonstrates that the plaintiff must have had knowledge of the claim's existence no later than the day of the

---

Step 4: If the decision in Step 3 is not satisfactory to the Union, the Union may within ten (10) working days appeal the decision of the Director or Superintendent of the YRC to the Attorney General or the Commissioner of Human Services or their designee. The Attorney General or the Commissioner of Human Services or designee may render a decision with or without further hearing or arguments within fifteen (15) days provided, however, that the designee shall not have been a part of the previous steps.

complaint); *State v. Thomas*, 2011 Ohio 2542, 2011 Ohio App. LEXIS 2181, at *5 (Ohio Ct. App. May 26, 2011) (unpublished) (holding claim that litigant did not know he had the right to file a direct appeal is "demonstrably invalid" when the litigant "had actually filed that appeal" prior to making that claim); *Fain v. Palmer*, No. 3:09-cv-00169-RCJ-WGC, 2012 U.S. Dist. LEXIS 137081, at *9 (D. Nev. Sept. 25, 2012) (unpublished) (same).

Additionally, as outlined above, Step 4, by its own terms, establishes the DHS Commissioner as the last stage of review prior to arbitration, with the DHS Commissioner reviewing the decision of either the YRC Superintendent of the Director of the Bureau of Corrections that was made as part of Step 3, which itself reviewed the decision of the YRC Warden or Chief Corrections Officer made as part of Step 2, which itself reviewed the immediate supervisor's initial determination made during Step 1. To hold — as the arbitrator did — that the DHS Commissioner's May 18, 2005 letter triggered the five-day filing period that allows the Union to initiate Step 1, but concluding that the Union may proceed immediately to arbitration, rather than requiring Steps 1 through 4 to actually occur, effectively writes those provisions out of the collective bargaining agreement.

The arbitrator's other justification for using the May 18, 2005 date — that "[r]eal life is very different" because "[e]mployees do not know all of their statutory or contractual rights immediately on the spot" — provides further support that he imposed his "own brand of industrial justice" on the parties rather than attempting to follow the collective bargaining agreement. *Misco*, 484 U.S. at 36. First, it is well-established that an employee's ignorance of the terms of a collective bargaining agreement — including time limits — is not a legitimate excuse for disregarding the agreement's terms. *See, e.g., Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir. 1985) ("Plaintiff argues that the defendants never told him that there was a thirty-day deadline to submit his grievance to arbitration, and that he never read the collective bargaining agreement. This argument is one that simply relies on his own ignorance of the expressed terms of his own collective bargaining agreement without any other indication that the union or the company possibly misled the plaintiff or fraudulently concealed something from the plaintiff."); *Miller v. General Motors Corp.*, 675 F.2d 146, 149-50 (7th Cir. 1982) (plaintiff "had a duty to know his union appeal rights"); *Hull v. Local 414*

*of Int'l Bhd. of Teamsters*, 601 F. Supp. 869, 873 (N.D. Ind. 1985) ("Plaintiff is required to familiarize himself with and to honor the terms and conditions of the collective bargain agreement involved."); *Dezura v. Firestone Tire & Rubber Co.*, 470 F. Supp. 121, 124 (E.D. Pa.) ("Ignorance, however, is no excuse, for plaintiff had a duty to acquaint himself with the nature and availability of union remedies."), *aff'd*, 612 F.2d 571 (3d Cir. 1979); *Smith v. General Elec. Co.*, 63 Wn.2d 624, 388 P.2d 550, 552 (1964) ("The plaintiff argues that she was ignorant of the requirements of the collective-bargaining agreement, because she had not read it at the time of her discharge. This does not excuse her noncompliance with its terms.").

More importantly, as more fully described above, the collective bargaining agreement does contain express provisions governing what happens if "real life" causes the Union to miss a deadline and the DHS refuses to consent to an extension of time. Pursuant to Section 11 of Article IX, if the Union misses the deadline to file a grievance, it "shall be considered disposed of on the final decision of the Attorney General or the Commissioner of Human Services or designee." In other words, the collective bargaining agreement permits the procedure set forth in Steps 1 through 4 to occur even if the five-day filing deadline is not met, with the only difference being that the decision rendered at Step 4 would be final and could not proceed to arbitration.[8]

Under these circumstances, it is clear that the arbitrator substituted the express terms of the collective bargaining agreement with his individual sense of justice. This is "a result . . . quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms," *Volt Info. Sciences*, 489 U.S. at 479, and in derogation of the basic principle that "parties are generally free to structure their arbitration agreements as they see fit [and] they may limit by contract the issues which they will arbitrate." *Id.* (citation omitted).

The paycheck Danielson received on May 20, 2000 was the last one that paid her a full salary. Moreover, the Division of Workers' Compensation, in its July 25, 2000 order, expressly stated that "the

---

[8] The collective bargaining agreement contains a similar provision in the event that the DHS "fail[s] to process [its] response to a grievance within the time limits provided," in that "the Union shall have the right of appeal provided said right of appeal is made within ten (10) working days."

compensation rate in this case is $303.73 per workweek" even though Danielson "was a regular employee . . . for a weekly rate of $455.60." And it is undisputed that Danielson not only stopped receiving any payments after January 2002, but was aware that payments had stopped and inquired with both agencies to determine the cause.

We emphasize that, although we question the FAA's applicability to this purely local matter, we reach this decision even under the heightened deference that is normally afforded to an arbitrator's award under the FAA. In this case, the arbitrator not only "has disregarded or modified unambiguous contract provisions," but clearly "based an award upon his own personal notions of right and wrong." *Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 207 (4th Cir. 2008) (quoting *Three S. Delaware, Inc. v. DataQuick Info Sys., Inc.*, 492 F.3d 520, 528 (4th Cir. 2007)). Like the arbitrator, we are sympathetic to the fact that Danielson was "caught between the two agencies." However, that does not give us license to disregard the plain and unambiguous text of the collective bargaining agreement. The Union did not file a grievance on Danielson's behalf until nearly four-and-a-half years after payment of her full salary ceased and nearly three years after all payments stopped, even though the collective bargaining agreement unambiguously required the Union to file a grievance within five days. *Accord, Williams v. Comstock*, 425 F.3d 175, 176-77 (2d Cir. 2005) ("While it might be true that [the plaintiff] was incapable of filing his grievance within two weeks of his stroke, [he] does not explain why he waited nearly two years to file the grievance. We therefore do not find [his] justification persuasive."). While the collective bargaining agreement required "the Attorney General or the Commissioner of Human Services or designee" to consider the grievance despite its untimely filing by the Union, it also provided that "the grievance shall be considered disposed of on the final decision" of that individual, in this case, the DHS Commissioner. And since the parties to the collective bargaining agreement agreed that "[t]he Arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the express provisions of th[e] Agreement and shall not have the authority to, detract from, or alter its provisions in any way," the arbitrator was not free to disregard the plain language of the grievance procedure and arbitrate a dispute that is clearly not arbitrable under the agreement, simply because he believed that "[r]eal life is very different" from what the parties had negotiated in their agreement. *See State v.*

*Rhode Island Bhd. of Corr. Officers*, 115 A.3d 924, 931 (R.I. 2015) (holding that an arbitrator exceeds his authority and issues a decision that does not draw its essence from an arbitration agreement when he resolved a dispute in a way that disregards clear provisions of a collective bargaining agreement). Consequently, we reverse the Superior Court's May 20, 2015 opinion, and remand the case for the Superior Court so it may vacate the arbitration award on remand.

## III. CONCLUSION

Because section 10 of the FAA does not apply to this proceeding, and the Union has otherwise failed to meet its burden of establishing that the DHS's complaint is time-barred under any other statute of limitations, we conclude that this matter was properly before the Superior Court. As to the merits, even if we were to apply the highly deferential standard of review provided for by the FAA rather than a *de novo* standard of review — an issue that we do not reach in this case — the arbitrator in this case did not attempt to apply the collective bargaining agreement negotiated by the parties, despite the limitations on his authority and the instructions expressly included in Section 7 thereof, but instead imposed his own brand of industrial justice in express contravention of the agreement's terms. Accordingly, we reverse the May 20, 2015 opinion, and direct the Superior Court on remand to vacate the arbitrator's February 25, 2007 decision.