

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-2-2007

# Edwards v. Hovensa LLC

Precedential or Non-Precedential: Precedential

Docket No. 06-4601

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Edwards v. Hovensa LLC" (2007). *2007 Decisions.* Paper 513.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/513

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 06-4601

—————

LELAND EDWARDS

v.

HOVENSA, LLC,
                                        Appellant

—————

On Appeal from the District Court of the Virgin Islands
(D.C. No. 05-cv-00041)
District Judge: Hon. Raymond L. Finch

—————

Argued May 8, 2007

Before: SLOVITER, STAPLETON, and VAN ANTWERPEN,
Circuit Judges

(Filed: August 2, 2007)

—————

W. Carl Jordan        (Argued)
Vinson & Elkins
Houston, TX 77002-6760

        Attorney for Appellant

K. Glenda Cameron (Argued)
Law Office of Rohn & Cameron
USVI, 00820

        Attorney for Appellee
                OPINION OF THE COURT

SLOVITER, <u>Circuit Judge</u>.

HOVENSA, LLC appeals from the decision of the District Court of the Virgin Islands denying HOVENSA's motion to compel arbitration on the ground that the relevant arbitration agreement is unconscionable under Virgin Islands law. Because the District Court's opinion relied on its view that it was not bound by contrary decisions of the Virgin Islands Superior Court, it is incumbent upon us to examine the restructured judicial system for the Virgin Islands following the 1984 Revised Organic Act and the 1990 amendment by the Virgin Islands legislature to 4 V.I. Code § 76(a).

**I.**

Leland Edwards entered into a Dispute Resolution Agreement ("DRA") with Wyatt, V.I., Inc. ("Wyatt"), his prospective employer, before he began to work at the HOVENSA factory in St. Croix. The DRA provided, in relevant part:

> Regardless of whether Wyatt offers me employment, both Wyatt and I agree to resolve any and all claims, disputes or controversies arising out of or relating to . . . (4) <u>any claims for personal injury or property damage arising in any way from my presence at the HOVENSA refinery that are not covered by the [Collective Bargaining Agreement]</u>; exclusively and by final and binding arbitration before a neutral arbitrator pursuant to the American Arbitration Association's ("AAA") *National Rules for the Resolution of Employment Disputes* ["National Rules"], a copy of which is available at <u>www.adr.org</u> or from Wyatt. This agreement extends to such disputes with or claims against Wyatt, HOVENSA, LLC, other contractors or subcontractors employed at the HOVENSA refinery, and any of their related or affiliated companies, entities, employees or individuals (as intended third party beneficiaries to this

agreement).

App. at 18 (emphasis added). Wyatt, V.I., Inc., which became Edwards' employer, is a contractor for HOVENSA.

Edwards was injured in January 2005 due to what he alleged was HOVENSA's negligence. He filed a complaint against HOVENSA in the District Court for the District of the Virgin Islands, St. Croix Division, asserting negligence and personal injury claims against HOVENSA arising out of the injury allegedly suffered during his employment. HOVENSA thereafter sought to enforce the terms of the DRA and filed a motion to compel arbitration and to stay the proceedings pending arbitration pursuant to 9 U.S.C. §§ 3 and 4. The District Court denied HOVENSA's motion, and it filed a timely notice of appeal.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and 48 U.S.C. § 1612(a). The parties are diverse. Edwards is a citizen of Massachusetts. HOVENSA is a limited liability corporation, incorporated in the U.S. Virgin Islands with its principal place of business in St. Croix. The amount in controversy exceeds $75,000.

This court has jurisdiction pursuant to 9 U.S.C. § 16(a)(3) which provides that an appeal may be taken from an order denying an application to compel arbitration. We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate. Lloyd v. HOVENSA, LLC, 369 F.3d 263, 273 (3d Cir. 2004). "[T]o the extent that the District Court predicated its decision on findings of fact, our standard of review is whether those findings were clearly erroneous." Id. (quoting Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 53-54 (3d Cir. 2001)).

## III.

In denying HOVENSA's motion to compel arbitration, the District Court concluded that "[t]he manner in which

3

Edwards entered into the Dispute Resolution Agreement is procedurally unconscionable and that the agreement to arbitrate personal injury claims against intended third-party beneficiaries is substantively unconscionable." App. at 11. In reaching this conclusion, the District Court rejected HOVENSA's contention that it must follow Superior Court decisions that have upheld similar agreements to arbitrate personal injury claims against third-party tortfeasors. See, e.g., Moore v. HOVENSA, LLC, 2005 WL 1677522 (V.I. Super. Ct. June 22, 2005); St. Rose v. HOVENSA, L.L.C., 2005 WL 1018071 (V.I. Super. Ct. Mar. 15, 2005).

In this appeal, HOVENSA argues that (1) the District Court improperly concluded that it was not bound by prior decisions of the Superior Court of the Virgin Islands that, as a matter of local contract law, agreements to arbitrate personal injury claims are not unconscionable and must be enforced; and (2) the District Court improperly refused to compel arbitration, pursuant to the Federal Arbitration Act, by concluding that Edwards' arbitration agreement with his employer, as applied to personal injury claims against the third party upon whose premises he worked, was not supported by adequate consideration and therefore was unconscionable.

## IV.

### A.

A brief analysis of the jurisdiction of the District Court of the Virgin Islands is necessary to put the issue before us in perspective. In our opinion in Carty v. Beech Aircraft Corp., 679 F.2d 1051 (3d Cir. 1982), where we considered in some detail the basis on which the District Court of the Virgin Islands had jurisdiction over the matter at issue there, we analyzed that court's jurisdiction "in light of historical perspective and the applicable authorities[.]" Id. at 1053. After reviewing the origin of the United States' dominion over the Virgin Islands and the establishment of its courts, in particular the 1936 Organic Act of the Virgin Islands, we concluded that "when Congress acted to establish the District Court of the Virgin Islands, it established it as a court of original and general jurisdiction." Id. at 1055.

4

Thereafter, Congress amended the Revised Organic Act in 1984, 48 U.S.C. § 1611 et seq., and "established the framework for a dual system of local and federal judicial review in the Virgin Islands." Parrott v. Gov't of the V.I., 230 F.3d 615, 619 (3d Cir. 2000). Under the 1954 Revised Organic Act, 48 U.S.C. § 1612, the District Court of the Virgin Islands had "jurisdiction over federal questions, regardless of the amount in controversy, and general original jurisdiction over questions of local law, subject to the exclusive jurisdiction of the local courts over civil actions where the amount in controversy was less than $500." Moravian Sch. Advisory Bd. v. Rawlins, 70 F.3d 270, 272 (3d Cir. 1995). As we explained in Parrott, "[b]y virtue of [the 1984] amendments, the District Court now possesses the jurisdiction of a 'District Court of the United States.' 48 U.S.C. § 1612(a)." 230 F.3d at 619.

Significantly, in Parrott we noted that under the statute,

> The Virgin Islands Legislature was now able, however, to divest the District Court of original jurisdiction for local matters by vesting that jurisdiction in territorial courts established by local law for all causes for which "any court established by the Constitution and laws of the United States does not have exclusive jurisdiction."

Id. We made explicit that "[t]o the extent that that divestiture power is exercised by the legislature, the District Court loses jurisdiction to the Territorial Court over local matters. See 48 U.S.C. § 1612(b)[.]" Id.[1]

The Virgin Islands statute enacted September 5, 1990, provided that:

> effective October 1, 1991, the Superior Court shall have original jurisdiction in all civil actions regardless of the amount in controversy; to supervise and administer estates and fiduciary

---

[1] Until October 29, 2004, the Superior Court was known as the Territorial Court.

> relations; to appoint and supervise guardians and trustees; to hear and determine juvenile, divorce, annulment and separation proceedings; to grant adoptions and changes of name; to establish paternity; to legitimize children and to make orders and decrees pertaining to the support of relations.

4 V.I.C. § 76(a).

As we stated in Parrott, "§ 1613 of the Revised Organic Act acts in combination with § 76(a) of the V.I. Code to effectively repeal any grant of concurrent jurisdiction to the District Court over local actions once the Virgin Islands legislature has vested jurisdiction over local civil actions in the Territorial Court." 230 F.3d at 620 (citing Brow v. Farrelly, 994 F.2d 1027, 1035-36 (3d Cir. 1993) (recognizing implicit repeal in 4 V.I. Code § 32)).

It follows that Edwards errs when he argues that the District Court of the Virgin Islands still remains vested with the "judicial power of the territory." He cites a pre-1984 case of this court for the proposition that the District Court of the Virgin Islands sits "essentially as a local court," not a federal court interpreting local law, V.I. Dep't of Conservation & Cultural Affairs v. V.I. Paving, Inc., 714 F.2d 283, 285-86 (3d Cir. 1983), but that opinion preceded the restructure of the courts of the Virgin Islands. Thus, we reiterate that which we previously made clear in Parrott: the 1991 Virgin Islands statute divested the District Court "of original jurisdiction over purely local civil matters." Parrott, 230 F.3d at 620. In addition, the District Court has been divested of its appellate jurisdiction.[2]

---

[2] The Revised Organic Act of 1954 granted the District Court "appellate jurisdiction to review the judgments and orders of the inferior courts of the Virgin Islands to the extent now or hereafter prescribed by local law." Act of July 22, 1954, Pub. L. No. 517-558, § 22, 68 Stat. 497, 506 (revising the Organic Act of the Virgin Islands of the United States). In 1984, the Revised Organic Act was amended to provide that when the Virgin Islands legislature established an appellate court, that court would

We recognize that it is not easy for the District Court, which has contributed generously and productively to the local law of the Virgin Islands, to accept its divestiture but that follows inexorably from the statutes and is confirmed by the legislative history. In 1991, the Virgin Islands legislature exercised the authority granted it under 48 U.S.C. § 1612(b) to divest the District Court of original jurisdiction over any cause over which local law has vested jurisdiction in the local courts. See 30 Cong. Rec. 23783, 23789 (1984) (statement of Sen. Weicker) ("At any time, . . . by vesting jurisdiction in the local courts, the local law will have the effect of divesting the district court of jurisdiction."). We therefore take this opportunity to

_____

supercede the appellate division of the District Court with respect to new appeals. See 48 U.S.C. § 1613a(a). That provision, 48 U.S.C. § 1613a, states:

> (d) Appeals to appellate court; effect on District Court
>
> Upon the establishment of the appellate court provided for in section 1611(a) of this title all appeals from the decisions of the courts of the Virgin Islands established by local law not previously taken must be taken to that appellate court. The establishment of the appellate court shall not result in the loss of jurisdiction of the district court over any appeal then pending in it. The rulings of the district court on such appeals may be reviewed in the United States Court of Appeals for the Third Circuit and in the Supreme Court notwithstanding the establishment of the appellate court.

The Virgin Islands legislature has now provided for the establishment of the Supreme Court of the Virgin Islands, see Russell v. DeJong, 2007 WL 1746256, at *1 (3d Cir. June 19, 2007), and it has repealed the prior statute establishing the Appellate Division of the District Court. Act of September 30, 2004, No. 6687, § 13(a), 2004 V.I. Sess. Law 190. The appellate division of the District Court will cease existence when the last case pending is decided.

reject any statements to the contrary in District Court opinions. See, e.g., <u>Spink v. Gen. Accident Ins. Co. of Puerto Rico, Ltd.</u>, 36 F. Supp. 2d 689, 691 (D.V.I. 1999) ("This court need not predict local law . . . because it is vested with the authority to decide novel questions as a local trial court.").

This does not mean that the doctrine established in <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), does not apply or that the District Court is bound to follow the law as expressed in decisions of the Superior Court. We turn to that issue.

**B.**

Although the 1984 Revised Organic Act provided the path that ultimately led to the District Court being divested of its jurisdiction over local law, it also expanded the jurisdiction of the District Court by investing it with diversity jurisdiction and thereby extended the principles of federalism to the judicial system of the Virgin Islands. Specifically, 48 U.S.C. § 1613 states:

> The relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings . . . .

In <u>Walker v. Gov't of the V.I.</u>, 230 F.3d 82, 87 (3d Cir. 2000), our court held that Congress intended that all of the provisions of Title 28 apply to the District Court "where appropriate." The Rules of Decision Act, which sets forth how federal courts are to interpret prior state court judgments, states, "The laws of the several states . . . shall be regarded as rules of Decision in civil actions in the courts of the United States . . . ." 28 U.S.C. § 1652.

8

It is likely that prior to 1984, the Rules of Decision Act did not apply to the District Court of the Virgin Islands. The Virgin Islands, of course, is a territory, not a state and the District Court is not a "court of the United States." <u>Waialua Agric. Co. v. Christian</u>, 305 U.S. 91, 108 (1938) (Rules of Decision Act not applicable to territories). Now that § 1613 mandates that the relations between courts established by laws of the United States, e.g., the Revised Organic Act, and courts established by local law should mirror the relations between state and federal courts, we conclude that § 1613 makes the <u>Erie</u> doctrine and the Rules of Decision Act applicable to the District Court of the Virgin Islands.

The fact that the District Court of the Virgin Islands is an Article IV court rather than an Article III court does not preclude the application of <u>Erie</u>. For example, the <u>Erie</u> doctrine is applied by bankruptcy courts. <u>See generally</u> Thomas E. Plank, <u>The *Erie* Doctrine and Bankruptcy</u>, 79 Notre Dame L. Rev. 633 (2004). In <u>Maternally Yours, Inc. v. Your Maternity Shop, Inc.</u>, 234 F.2d 538, 540-41 n.1 (2d Cir. 1956), the court stated that "the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law." Although this court stated in <u>Parrott</u> that "[f]ederalism concerns . . . are not implicated in matters where the District Court, <u>in the past</u>, reviewed questions of local law sitting as a territorial court and exercising its general jurisdiction," <u>Parrott</u>, 230 F.3d at 623 (emphasis added), that is no longer the case. In more recent cases, this court has referred to the District Court of the Virgin Islands as a "federal court." <u>See</u> <u>Moravian</u>, 70 F.3d at 274 ("Because §§ 1631 and 610 clearly demonstrate that Congress intended to limit the authority of the federal courts to transfer cases only to other federal courts, we have held that § 1631 provides no authority for a federal court to transfer a case over which it lacks jurisdiction to a state court.").

We see no reason not to incorporate the federalism principles applicable throughout the circuit into our relationship with the Virgin Islands courts. Indeed, concluding otherwise would result in two court systems "engag[ing] independently in the process of formulating the local law of the [Territory]," thereby "subvert[ing] the dual aims of <u>Erie</u>: discouraging forum

9

shopping and promoting uniformity within any given jurisdiction on matters of local substantive law." Lee v. Flintkote Co., 593 F.2d 1275, 1278-79 n.14 (D.C. Cir. 1979).

## C.

A federal court under Erie is bound to follow state law as announced by the highest state court. "If the highest court has not spoken to the issue, we can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule." Mosley v. Wilson, 102 F.3d 85, 92 (3d Cir. 1996). Although state intermediate appellate decisions are not automatically controlling, see Paoletto v. Beech Aircraft Corp., 464 F.2d 976 (3d Cir. 1972), the Supreme Court in Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1966), summarized current practice as follows: "even in diversity cases this Court has further held that while the decrees of lower state courts should be attributed some weight the decision is not controlling where the highest court of the State has not spoken on the point." Id. at 465 (internal quotation marks and citations omitted). In West v. A.T.&T. Co., 311 U.S. 223, 237 (1940), the Supreme Court further held that "an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

The Superior Court of the Virgin Islands (formerly the Territorial Court) is not the highest court of the Territory. It is not even an intermediate appellate court, but rather a trial court. Therefore, although we believe that the District Court could have looked to the decisions of the Superior Court as "a datum for ascertaining state law," we cannot conclude that it erred in holding that it was not bound by the decisions of the Superior Court.[3] Because the Virgin Islands Supreme Court has made no

_____

[3] Because the Supreme Court of the Virgin Islands had not yet been established at the time the District Court rendered its decision here, we recognize that it would have been impossible for the District Court to meaningfully apply the Erie doctrine in ascertaining Virgin Islands law. As of the District Court's

10

pronouncement on the arbitration issue presented in this case, we will turn our attention to the arbitrability of employee claims for personal injury.

## V.

_____

decision, the Virgin Islands did not yet have a truly "separate, insular judicial system." Saludes v. Ramos, 744 F.2d 992, 994 (3d Cir. 1984). While the Superior Court served, and continues to serve, as a territorial trial court exercising exclusive jurisdiction over purely local matters, appeals from that Court were to the Appellate Division of the District Court, which is "essentially a federal creature, and not an insular [local] appellate court," BA Properties Inc. v. Gov't of the Virgin Islands, 299 F.3d 207, 212 (3d Cir. 2002), and our Court exercised second-level appellate review as the de facto "Supreme Court of the Virgin Islands." Polius v. Clark Equip. Co., 802 F.2d 75, 80 (3d Cir. 1986); see also BA Properties, 299 F.3d at 212 (creating an indigenous Virgin Islands jurisprudence "has proved and will continue to prove very difficult to attain until the Virgin Islands has its own appellate court composed entirely of locally appointed judges, which would essentially supplant the Third Circuit"); id. at 212 (Third Circuit and Appellate Division both exercise plenary review over interpretation and application of Virgin Islands law by Superior Court). In effect, the District Court's task was to "predict" how our Court, sitting essentially as the Supreme Court of the Virgin Islands, would resolve the issue of territorial law presented here.

Going forward, now that the Virgin Islands has established an insular appellate court and will begin developing indigenous jurisprudence, the District Court, when exercising jurisdiction over cases requiring the application of Virgin Islands law, will be required to predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law, and should seek guidance from Superior Court decisions in undertaking this endeavor. As noted above, however, the District Court will not be bound by Superior Court decisions. See Houbigant, Inc. v. Federal Ins. Co., 374 F.3d 192, 199 (3d Cir. 2004) (district court sitting in diversity is not bound by state trial court rulings).

11

In declining to compel arbitration notwithstanding the DRA, the District Court held that Edwards' agreement to arbitrate personal injury claims is procedurally and substantively unconscionable.[4] In support of its holding, the District Court concluded that the consideration was grossly inadequate and that Edwards did not benefit from any efficiency or economy in the arbitration process. The Court stated that there is a gross disparity in the values exchanged, in that Edwards has given up the right to a judicial forum against a third-party tortfeasor for his personal injury claims, solely for the sake of employment. The Court stated that the economic benefit of arbitration for employees with personal injury claims is not as significant as it is with respect to an employee's contractual or statutory employment claims. We suggest that the District Court's opinion reflects the judicial hostility to arbitration that the Supreme Court of the United States has sought to alter.

Before directing parties to proceed to arbitration, the court must ascertain whether the parties entered a valid agreement to arbitrate by looking to the relevant state law of contracts. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003). Pursuant to 1 V.I.C. § 4, "[t]he rules of common law, as expressed in the restatements of law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."

Restatement (Second) of Contracts § 208 provides that a court may refuse to enforce a contract or term of a contract that is unconscionable at the time the contract is made. The doctrine of

---

[4] The District Court held that the agreement to arbitrate personal injury claims is not void ab initio, that to the extent that Edwards has a statutory right to a judicial forum for his personal injury claims against HOVENSA, the FAA preempts it, that the agreement is not unenforceable for failure to comply with 24 V.I.C. § 74a, and that HOVENSA is an intended third-party beneficiary of the DRA. We agree, and therefore do not devote any discussion to these issues.

unconscionability involves both "procedural" and "substantive" elements. See Alexander, 341 F.3d at 265 (explaining that the "procedural" element of a claim of unconscionability "is generally satisfied if the agreement constitutes a contract of adhesion."). However, a contract term is "not unconscionable merely because the parties to it are unequal in bargaining position." Restatement at § 208 cmt. d (cited in Alexander, 341 F.3d at 265).

There is no dispute here that the DRA is a procedurally unconscionable adhesion contract. HOVENSA instead contests the District Court's conclusion that the DRA was substantively unconscionable. Because this presents a legal question concerning the enforceability of an arbitration agreement, our standard of review is plenary. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 176 (3d Cir. 1999).

Although there had been some resistance to requiring arbitration of employment-related claims, the Supreme Court of the United States held in Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001), that a contract by an employee to arbitrate such claims is valid. The Court made clear that the Federal Arbitration Act applies to employment contracts. Id. at 119.

The District Court sought to distinguish the holding in Circuit City Stores from the issue in this case on the ground that this case involves a personal injury claim rather than a contractual or statutory employment claim, stating that "personal injury claims frequently involve larger sums of money." App. at 11. That distinction is unpersuasive. In the first place, nothing in the Circuit City Stores opinion suggested that the application of the agreement to arbitrate depended on the size of the claim. In the second place, statutory or contractual employment claims are likely to involve no lesser monetary claims (and not infrequently higher monetary claims) than personal injury claims.

The District Court also relied on what it believed was a "gross disparity in the values exchanged in that Edwards has given up the right to a judicial forum against a third-party tortfeasor for his personal injury claims, solely for the sake of employment." App. at 10-11. We do not deny that there is a

13

disparity in the consideration exchanged between the parties here. The DRA essentially requires Edwards to arbitrate his claims against Wyatt and third-party beneficiaries like HOVENSA while they retain the option of litigating any claims they might have against Edwards. That fact standing alone, however, does not make the DRA substantively unconscionable.

We take our guidance from the Supreme Court's decision in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991). Gilmer, the manager of financial services for the respondent firm, was terminated when he was 62 years old. Id. at 24. He filed an action under the Age Discrimination in Employment Act. Id. at 23. His employer sought arbitration, as there was an arbitration agreement that was part of the registration application Gilmer was obliged to sign as a securities representative with several stock exchanges. Id. Gilmer could not have served in his job without such registration. Id.

The district court denied Interstate's motion to compel arbitration because it concluded that Congress intended to preclude ADEA claimants from the waiver of a judicial forum. Id. at 24. The Court of Appeals reversed, and the Supreme Court upheld the Court of Appeals' position. The Court noted that the purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Id. It reiterated the statement from one of its earlier opinions that the provisions of the FAA "manifest a 'liberal federal policy favoring arbitration agreements.'" Id. at 25 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). The Gilmer Court rejected the argument that compulsory arbitration of age discrimination claims was inconsistent with the social policy underlying the ADEA, noting that "the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." Id. at 28 (internal quotation marks and citations omitted).

Gilmer and other Supreme Court decisions in this area, see, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989) (enforcing arbitration agreement

14

requiring plaintiff to arbitrate claims under Securities Act of 1933); Shearson/American Express Inc. v. McMahon, 482 U.S. 220 (1987) (upholding agreements to arbitrate claims under Security Exchange Act of 1934 and the RICO statutes), are grounded on the premise that "arbitration clauses substitute one procedurally fair forum for another." David S. Schwartz, Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitration, 1997 Wisc. L. Rev. 33, 110 (1997). Where, as here, an arbitration provision requires only one side to submit its claims (personal injury or otherwise) to arbitration, but does not alter or limit the rights and remedies available to that party in the arbitral forum, it cannot be said that the parties' agreement is substantively unconscionable under the rationale of Gilmer.[5] We see no reason to predict that the Supreme Court of the Virgin Islands will hold otherwise when faced with this question.

## VI.

For the reasons set forth, we will vacate the District Court's order and remand to the District Court to grant HOVENSA's motion to compel arbitration and stay the proceedings pending arbitration pursuant to 9 U.S.C. §§ 3 and 4.

---

[5]   In Alexander, by contrast, we found the arbitration agreement to be unconscionable under Virgin Islands law based on certain procedural provisions, such as a unilateral thirty-day suit limitations period, which made it "unnecessarily burdensome for an employee to seek relief from the [employer's] illegal conduct," 341 F.3d at 267, as well as certain substantive provisions, including a restriction on the availability of damages, which deprived the employee of "complete compensation for any harm done" while enabling the employer "to evade full responsibility for its actions." Id.