**BENJAMIN PRENTICE, Plaintiff**
**v.**
**SEABORNE AVIATION, INC. d/b/a SEABORNE AIRLINES, Defendant**

Case No: SX-07-CV-220
Superior Court of the Virgin Islands
Division of St. Croix
September 1, 2016

LEE J. ROHN, ESQ., Lee J. Rohn & Associates, LLC, St. Croix, USVI, *Attorney for Plaintiff.*

MARK W. ECKARD, ESQ., Hamm Eckard, LLP, St. Croix, USVI, *Attorney for Defendant.*

BRADY, *Judge*

## MEMORANDUM OPINION

(September 1, 2016)

THIS MATTER comes before the Court on Defendant Seaborne Aviation Inc. (Seaborne)'s Motion to Stay Pending Arbitration (Motion) and accompanying Memorandum in Support, filed July 17, 2007;

Plaintiff's Opposition to Motion to Stay Proceedings Pending Arbitration and accompanying Memorandum in Support, filed September 19, 2007; Defendant's Reply, filed August 21, 2009; and Defendant's Supplement to (i) Motion to Stay Pending Arbitration and (ii) Reply to Plaintiff's Opposition to Motion to Stay Pending Arbitration, filed June 30, 2016.[1]

Also before the Court is Plaintiff Benjamin Prentice's Supplemental Opposition to Stay Proceedings Pending Arbitration, filed July 25, 2016. Due to an internal processing error, Plaintiff's filing was not received in chambers until August 9, 2016, a full week after the Court entered its August 2, 2016 Order granting Seaborne's Motion. Because Plaintiff's Supplemental Opposition raises new issues concerning the applicability of the Federal Arbitration Act (FAA) to proceedings in the Virgin Islands judiciary based on recent developments in the law, the Court vacates its previous Order and enters this Memorandum Opinion and accompanying Order to address Plaintiff's supplemental arguments and clarify the Court's understanding of the role of the FAA in Virgin Islands law.

For the reasons discussed herein, the Court concludes that the FAA is applicable to the Employment Agreement between Prentice and Seaborne and therefore, pursuant to the contract's mandatory arbitration clause, Plaintiff's claims must be resolved in arbitration. Although the Court concurs with the Motion's premise that arbitration is the sole forum within which Plaintiff may pursue his claims, Defendant's Motion is only granted in part. Because Plaintiff must seek his relief exclusively in arbitration, there is no further controversy over which the Court need retain jurisdiction and, therefore, a stay of proceedings is inappropriate. Rather, Plaintiff's Complaint will be dismissed.

**Background**

On April 16, 2007, Plaintiff filed his Complaint alleging that he was wrongfully terminated from his employment with Seaborne Airlines on or about August 11, 2006, and as a result suffered physical injuries, medical expenses, psychological injuries, and other damages. Complaint ¶¶ 11, 16. With its Motion, Defendant presents a copy of the Employment

---

[1] Because this matter and Seaborne's pending Motion had lain dormant so long, by Orders entered October 26, 2015 and April 13, 2016, the Court solicited an update from the parties as to the status of their dispute and supplemental briefing on developments in Virgin Islands law since their initial filings.

Agreement signed by Plaintiff wherein the parties each agreed to submit claims between them to arbitration. Defendant asserts that as part of a valid and enforceable employment contract, the arbitration clause must be upheld and Plaintiff's case before the Court must stayed pending the results of the arbitration. Plaintiff contends that the arbitration clause is unenforceable because: 1) Defendant failed to comply with 24 V.I.C. § 74a requiring an aggrieved party to formally request and the opposing party to accept referral to arbitration; and 2) the arbitration provision of the Employment Agreement is both procedurally and substantively unconscionable.

Paragraph 10 of the parties' Employment Agreement reads in relevant part:

> Any controversy or claim by you or Seaborne against each other relating to your employment by Seaborne will be resolved exclusively by arbitration, including, without limitation, all controversies or claims arising from or relating in any way to (i) this Agreement, (ii) the breach of this Agreement, (iii) your employment with Seaborne, or (iv) your presence or Seaborne's presence at the Facilities, including claims by you against Seaborne, its partners, or subsidiary or parent or affiliated companies, and its or their officers, directors, shareholders, employees, and agents . . .

██ Although the Order entered August 2, 2016 is vacated, the Court adopts and restates the reasoning set forth therein, as follows:

> Under the Federal Arbitration Act (FAA), "a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By the plain language of the parties Employment Agreement, it is clear that Plaintiff's claims concerning the termination of his employment with Seaborne fall within the scope of the arbitration provision. Thus, Plaintiff may only avoid arbitration, and maintain this action in the Superior Court, by demonstrating that some ground independently exists in law or equity for the revocation of the contract.
>
> Plaintiff first argues that Defendant's Motion must be denied because Defendant failed to comply with the requirements of 24 V.I.C.

100

§ 74a which, notwithstanding the existence of an employment contract or an arbitration clause, purports to allow arbitration of disputes only where: 1) the party seeking arbitration submits a written request for arbitration to the other party, and 2) the other party consents in writing not later than sixty days after receiving the request. However, it is well settled law in this jurisdiction that 24 V.I.C. § 74a is pre-empted by the Federal Arbitration Act. *See, e.g., Moore v. HOVENSA, L.L.C.*, 46 V.I. 144, 147-148 (V.I. Super. 2005); *St. Rose v. HOVENSA, L.L.C.*, 46 V.I. 151, 153 (V.I. Super. Ct. 2005). Additionally, persuasive authority of both the District Court of the Virgin Islands and the Third Circuit Court of Appeals is to the same effect. *See, e.g., Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362 n.4, 49 V.I. 1133 (3d Cir. 2007); *Wilhelm v. Hovic*, 2009 U.S. Dist. LEXIS 13624, at *8 (D.V.I. 2009). Therefore, the Court finds that 24 V.I.C. § 74a is pre-empted by the FAA and Plaintiff's argument for voiding the arbitration provision of the Employment Agreement based upon a failure to comply with this statute must fail.

Plaintiff's second argument — that the arbitration provision of the Employment Agreement is unconscionable — is equally devoid of merit. Much of Plaintiff's argument concerning unconscionability focuses on the statutory requirement of 5 V.I.C. § 815 that "an agreement that waives a right guaranteed by the Constitution of the United States, is unenforceable, unless the waiver of the right is agreed to knowingly and voluntarily." Plaintiff asserts that because 5 V.I.C. § 815 is generally applicable to all contracts it does not violate the FAA, and that because the arbitration provision of the employment contract effectively deprives Plaintiff of his right to a trial by jury, it is unenforceable under the statute. Opposition, at 13. Critically however, 5 V.I.C. § 815 was not enacted until September 1, 2006; nearly one year after Plaintiff entered into the contract with Defendant on September 30, 2005. As 5 V.I.C. § 815 contains no language suggesting any intent to apply the statute retroactively, it has no application in the context of the contract between the parties in this case. In any event, 5 V.I.C. § 815 was ultimately repealed in 2010 and subsequently held to be preempted by the FAA. *See Ruiz v. HOVENSA, L.L.C.*, 2011 V.I. LEXIS 84, at *3 (V.I. Super. 2011) (following District Court of the Virgin Islands in finding that 5 V.I.C. § 815 was preempted by the FAA).

Additionally, Plaintiff's more general arguments concerning unconscionability — excessive cost of arbitration, unequal bargaining power, lack of meaningful opportunity to consult an attorney — are all foreclosed by longstanding precedent of this Court and the overwhelming weight of persuasive authority from the District Court of the Virgin Islands and the Third Circuit Court of Appeals, consistently upholding the enforceability of similar arbitration provisions in employment contracts in the face of such challenges. *See, e.g., St. Rose,* 46 V.I. at 153 ("finding no significant difference in the instant arbitration provisions and similar provisions held valid and enforceable"); *Edwards,* 497 F.3d at 364 (enforcing arbitration provision over unconscionability challenge where provision "does not alter or limit the rights and remedies available to that party in the arbitral forum"). Thus, the Court rejects Plaintiff's argument that Defendant's Motion must be denied because the arbitration provision in his employment contract is unconscionable.

Because Plaintiff has failed to demonstrate that some ground independently exists in law or equity for the revocation of the arbitration provision of the employment contract, the court finds that the arbitration provision is valid and enforceable. In turn, as the language of the arbitration provision in the parties' Employment Agreement clearly requires that "all controversies or claims arising from or relating in any way to . . . [Plaintiff's] employment with Seaborne," be submitted to binding arbitration, Defendant's Motion must be granted.

## Discussion

Plaintiff's Supplemental Opposition argues that under recent precedent from the Supreme Court of the Virgin Islands, the provisions of the FAA are inapplicable where, as here, the arbitration clause in question exists in an employment contract between a Virgin Islands business and an employee living and working in the Virgin Islands. Suppl. Opp., at 3. However, Plaintiff's argument proceeds from the faulty premise that in *Gov't of the V.I. v. United Indus., Svc., Transp., Prof. & Gov't Workers of N.A.,* the Supreme Court of the Virgin Islands *held* that the FAA is only applicable to arbitration clauses found in contracts evidencing some nexus with interstate commerce. *See* 64 V.I. 312, 321 n.3 (V.I. 2016) (quoting *Allen v. Hovensa, L.L.C.,* 59 V.I. 430, 443 n.2 (V.I. 2013)). In

fact, while the Supreme Court used the opportunity presented in *Allen* and *United Indus., Svc.*, to express its reservations and question the applicability of the FAA, in both cases the Court expressly declined to decide the issue, thereby confirming that these particular opinions do not carry the force of law. *See Allen*, 59 V.I. at 443 n.2 ("since Allen's claim fails regardless of whether section 2 of the FAA preempts the VIWCA, we need not make this determination for the first time on appeal"); *United Indus., Svc.*, 64 V.I. 312, 321 n.3 ("because the result would remain the same regardless of whether the FAA is applicable to this case, we decline to reach the issue as part of this appeal").

### Applicability of the FAA in the Virgin Islands

 While the Superior Court is not bound to follow this *dicta* from the Supreme Court, the Superior Court remains bound to follow the binding precedent of the Third Circuit's decision in *Gov't of the V.I. v. United Indus. Workers, N.A.*, 169 F.3d 172, 40 V.I. 489 (3d Cir. 1999),[2]

---

[2] This case originated in the Superior Court of the Virgin Islands, was first appealed to the Appellate Division of the District Court of the Virgin Islands, and ultimately was appealed to the Third Circuit Court of Appeals sitting as the *de facto* court of last resort for the Virgin Islands and therefore, until the Supreme Court expressly holds otherwise, this Court is bound by the decision. *See Najawicz v. People of the V.I.*, 58 V.I. 315, 327-28 (V.I. 2013) (explaining that Third Circuit decisions in which that court was sitting as the "*de facto* court of last resort in the Virgin Islands" are binding upon the Superior Court even though they would only represent persuasive authority if the Supreme Court of the Virgin Islands were to consider the issue). The Court recognizes that the Third Circuit's decision in *United Indus. Workers* minimally discusses and endorses the applicability of the FAA to courts in the Virgin Islands by way of 1 V.I.C. § 4 — and in turn the Restatements of Law — which has since been implicitly repealed. *See, e.g., King v. Appleton*, 61 V.I. 339, 349 (V.I. 2013) ("the Legislature implicitly repealed 1 V.I.C. § 4 — which formerly provided that 'the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands' — by vesting this Court with 'the supreme judicial power of the Territory' ") (citations omitted). The Court further notes that opinions of the Third Circuit Court of Appeals based upon "mechanistic and uncritical reliance" on 1 V.I.C. § 4, even when decided in the Court's capacity as the *de facto* court of last resort for the Virgin Islands, do not constitute binding precedent in the courts of the Virgin Islands. *See, e.g., Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 396 (V.I. 2014) (finding that because the Third Circuit precedent relevant to the issue before the Court had been decided on the basis of the now implicitly repealed 1 V.I.C. § 4, the Court was, in fact, presented with an entirely different question of law and the Third Circuit precedent did not control). However, *United Indus. Workers* only discusses 1 V.I.C. § 4 in the context of reviewing the decision of the Appellate Division of the District Court, while the Third Circuit's decision is based entirely on the requirements of the FAA itself as interpreted by the Supreme Court of the United States, and therefore constitutes binding precedent in the Superior Court.

the very decision upon which both *Allen* and *United Indus., Svc.* purportedly rest. Building upon the precedents established by the Supreme Court of the United States in *Southland Corp. v. Keating*,[3] and *Allied-Bruce Terminix Companies v. Dobson*,[4] the Third Circuit held that "in order for the FAA to apply in the [Superior] Court, the arbitration at issue must affect interstate commerce as defined by *Allied-Bruce*." *United Indus. Workers*, 169 F.3d at 176. While noting that the Virgin Islands, unlike most other states, had not adopted statutes to make the FAA explicitly applicable in the territorial judiciary, the Court reiterated that the reach of the FAA is coextensive with the full breadth of Congress' regulatory powers under the Commerce Clause. *Id.* Moreover, the Court echoed the Supreme Court's opinion in *Allied-Bruce*, explaining that this broad, expansive understanding of the scope of the FAA furthers the fundamental purpose of the FAA to overcome judicial hostility to the enforcement of arbitration agreements by placing arbitration clauses on equal footing with other contractual provisions. *Id.*; *see also Allied-Bruce*, 513 U.S. at 275 ("a broad interpretation of this language is consistent with the Act's basic purpose, to put arbitration provisions on 'the same footing' as a contract's other terms").

### Application of the Interstate Nexus Requirement

In determining whether the contract in *United Indus. Workers* evidenced a sufficient connection with interstate commerce so as to trigger application of the FAA, the Third Circuit reasoned:

> While it is true that in this case the record is scant as to an interstate nexus, we recognize that the appellee United Industrial Workers of

---

The Supreme Court itself has characterized the Third Circuit's decision as finding that "the Federal Arbitration Act ('FAA') simultaneously applies to civil actions in Virgin Islands local courts through the RESTATEMENT (SECOND) OF CONTRACTS § 345(f), made applicable through section 4 of title 1 of the Virgin Islands Code, and section 2 of the FAA, which the United States Supreme Court has construed as preempting certain state and local laws inconsistent with the FAA." *World Fresh Mkt. v. P.D.C.M. Assocs., S.E.*, 2011 V.I. Supreme LEXIS 29, at *4 (V.I. 2011).

[3] 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (upholding applicability of FAA to the states and territories of the United States).

[4] 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) (establishing that the scope of the FAA is coextensive with the full breadth of Congress' regulatory power under the Commerce Clause).

North America, Seafarers International Union, AFL-CIO itself, which represents Acker, is an international body embracing Union workers not only in the various states of the union, but in foreign countries as well. Its activities, by their very nature, qualify as having an interstate nexus. Moreover, we can take judicial notice that the Attorney General's office of the Virgin Islands, of which Acker was a member until his termination, has been and is involved with matters concerning the various states . . . .

Although we recognize that the individual employment contract . . . can be construed narrowly as an employment contract of a local nature only, we are not persuaded that the character of his union, which negotiated the CBA, which sought to enforce the CBA, and which filed the grievance on behalf of Acker, and the nature of Acker's employment can be overlooked in determining whether the necessary interstate nexus for application of the FAA is present.

*Id.* at 176-77. Thus, in evaluating whether the employment contract in question evidenced a sufficient nexus with interstate commerce, the Third Circuit looked not only to the nature of the contract itself, but also to the nature and impact of the individual's employment and the employer's business in general.

 Additionally, this broad, permissive application of the interstate nexus requirement follows logically from the Supreme Court's conclusion in *Allied-Bruce*, that the "evidencing a transaction in commerce," language of 9 U.S.C. § 2 means "only that the transaction (that the contract 'evidences') must turn out, in fact, to have involved interstate commerce." 513 U.S. at 277. Justice Breyer's majority opinion repeatedly states that in enacting the FAA Congress intended to exercise its powers under the Commerce Clause to their fullest extent. Although the parties in *Allied-Bruce* did not contest whether the transaction, in fact, involved interstate commerce, the Court nonetheless identified the factual basis upon which it would presumably have found a sufficient connection with interstate commerce had the issue been presented.

The parties do not contest that the transaction in this case, in fact, involved interstate commerce. In addition to the multistate nature of Terminix and Allied-Bruce, the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama.

105

*Allied-Bruce*, 513 U.S. at 282. Thus, the Supreme Court as well considered not only the nature of the individual contract and transaction at issue, but also the nature of the parties' business operations, including even the simple fact that Allied-Bruce obtained business supplies from out of state.

By contrast, the Supreme Court of the Virgin Islands has suggested, in *dicta*, that it favors a far narrower interpretation of the interstate nexus requirement that would, in turn, significantly limit the applicability of the FAA. The Supreme Court has opined that no interstate nexus would exist to trigger application of the FAA to an arbitration clause contained in a collective bargaining agreement "executed between a Virgin Islands governmental department and a Virgin Islands union on behalf of workers residing in the Virgin Islands who provide services in Virgin Islands correctional facilities." *United Indus., Svc.*, 64 V.I. 312, 321 n.3. In *Allen*, the Supreme Court similarly noted that it was presented with no evidence or argument from which it could conclude that an "employment agreement between Allen, a Virgin Islands resident, and Wyatt, a Virgin Islands corporation that provides services exclusively at an oil refinery located in the Virgin Islands, affects interstate commerce." 59 V.I. at 443 n.2.

However, this restrictive reading seemingly conflicts with the manner in which both the Supreme Court of the United States and the Third Circuit have conceived of and applied the interstate nexus requirement. *See, e.g., Allied-Bruce*, 513 U.S. at 275 ("a narrower interpretation is not consistent with the Act's purpose"). Despite the fact that the Supreme Court of the Virgin Islands and the Third Circuit — in *United Indus., Svc.* and *United Indus. Workers* respectively — were presented with remarkably similar factual scenarios involving the enforceability of arbitration clauses contained in collective bargaining agreements between Virgin Islands governmental departments — the Department of Human Services and the Department of Justice respectively — and unions affiliated with the Seafarers International Union of North America on behalf of employees living and working in the Virgin Islands; and despite the fact that the Supreme Court of the Virgin Islands purportedly relied on *United Indus. Workers* as its leading case in support of the proposition that "a contract comes within the purview of the FAA only when an interstate nexus is shown"; the Supreme Court, in noting that it found "no evidence or legal argument to explain how this agreement involves commerce," nonetheless either ignored or elected not to consider the international

character of the union or the various ways in which the operations of the Department of Human Services, just as the Department of Justice, inherently rely on and, in turn, affect interstate commerce. *See* 64 V.I. at 321 n.3; *United Indus. Workers*, 169 F.3d at 176-77. Thus, as the interpretation of the interstate nexus requirement suggested by the Supreme Court of the Virgin Islands does not carry the force of law, and in any event appears foreclosed by precedent from both the Third Circuit and the Supreme Court of the United States interpreting and applying this requirement, this Court continues to be bound by the Third Circuit's decision in *United Indus. Workers*, and will apply the interstate nexus requirement as defined and explained therein.

*Application of the Interstate Nexus Requirement to the Instant Case*

■ In evaluating whether the employment contract between Prentice and Seaborne evidences a transaction that "turn[ed] out, in fact, to have involved interstate commerce," the Court proceeds under the guiding principle, articulated by the Supreme Court of the United States and reiterated by the Third Circuit, that in enacting the FAA Congress intended to utilize the full extent of its powers under the Commerce Clause to uphold the enforceability of arbitration agreements across the nation. *See Allied-Bruce*, 513 U.S. at 277. Thus, the only arbitration agreements not governed by the FAA are those so devoid of any connection to interstate commerce that they would fail to withstand scrutiny even under the expansive interpretation of Congressional regulatory power that has defined Commerce Clause jurisprudence for nearly 75 years.[5] The Court is also guided by the analytical focus of both

---

[5] The Commerce Clause, as interpreted and applied over the course of three-quarters of a century of Supreme Court jurisprudence, is perhaps the most bountiful wellspring of regulatory power the federal government has ever known. The high-watermark of expansive Commerce Clause jurisprudence is represented by the seminal 1942 decision of the Supreme Court in *Wickard v. Fillburn*, in which the Court held that it was within the scope of Congressional power under the Commerce Clause to apply national quotas to wheat grown on one's own land for one's own consumption because even if the impact of one individual's economic behavior — here growing wheat — has a negligible effect on commerce, that individual's contribution, taken together with that of others similarly situated, "is far from trivial." 317 U.S. 111, 127-28, 63 S. Ct. 82, 87 L. Ed. 122 (1942). Following this decision, the Supreme Court would not find that an exercise of Congressional authority exceeded the scope of its powers under the Commerce Clause until the Court's 1995 decision in *United States v. Lopez*, 514 U.S. 549. In *Lopez*, the Court considered the constitutionality of the

the Third Circuit and the Supreme Court of the United States upon the interstate or international nature of the operations of one or more parties to the contract.

■ Here, despite the fact that "the record is scant as to an interstate nexus," just as in *United Indus. Workers*, the Court is of the opinion that even if the "the individual employment contract [ ] can be construed narrowly as an employment contract of a local nature only," Defendant Seaborne's business — offering commercial air travel between the U.S. Virgin Islands, Puerto Rico, the British Virgin Islands, and several other international destinations in the Caribbean — is inherently interstate and international in nature. *See* 169 F.3d at 176-77. Even if the employment contract, on its face, involves only an agreement between a Virgin Islands business and a Virgin Islands citizen concerning work to be performed entirely within the Virgin Islands, in point of fact Prentice contributed to the operation of a business that provided interstate and international commercial air travel. Thus, it is clear that the Employment Agreement between Prentice and Seaborne, "turn[ed] out, in fact, to have involved interstate commerce," and that, consequently, the FAA is applicable to the arbitration provision in the contract at the heart of this dispute. *See Allied-Bruce*, 513 U.S. at 277.

---

Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A) — making it a federal crime for an individual to knowingly possess a firearm in an area that the individual knows or reasonably believes to be a school zone — and held that the Act exceeded the scope of Congress' powers under the Commerce Clause. 514 U.S. 549, 559-65, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995). The Court reasoned that the Government's posited connection between the regulated conduct and interstate commerce — gun possession leads to violent crime, which impedes the goals of education, which in turn undermines national commercial productivity — was particularly strained and presented a slippery slope by which any activity of any individual could be deemed to affect interstate commerce, thereby threatening the powers traditionally reserved to the states to regulate education and police criminal activity. *Id.* at 563-65. *See also United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000) (invalidating § 40302 of the Violence Against Women Act as exceeding the scope of Congressional power under the Commerce Clause, following the same reasoning as *Lopez*). However, in *Gonzales v. Raich*, the Supreme Court, facing a challenge to Congressional authority to prohibit the cultivation of marijuana grown solely for individual medicinal consumption in a state where such cultivation and consumption was legal under state law, held that Congress had not exceeded the scope of its powers under the commerce clause citing *Wickard*; reflecting that *Lopez* and *Morrison* constitute aberrations rather than the beginning of a general trend of scaling back the traditionally broad interpretation of Congressional powers under the Commerce Clause. 545 U.S. 1, 32-33, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005).

■ This decision therefore supports and affirms the conclusion of the Court's Order entered August 2, 2016 rejecting Plaintiff's arguments that: 1) Defendant failed to comply with 24 V.I.C. § 74a requiring an aggrieved party to formally request, and the opposing party to accept arbitration; and 2) the arbitration provision of the Employment Agreement is both procedurally and substantively unconscionable. Given the Court's conclusion herein that the FAA applies to Plaintiff's Employment Agreement, the great weight of precedent finding that 24 V.I.C. § 74a is preempted by the FAA remains applicable,[6] and therefore Plaintiff's argument for voiding the arbitration provision of the Employment Agreement based upon a failure to comply with that statute must fail.[7]

*Application of 9 U.S.C. § 3 (Automatic Stay)*

Although application of the Third Circuit's precedent in *United Indus. Workers* dictates that the *substantive* provisions of the FAA apply to the arbitration provision in Prentice's Employment Agreement, and that it is therefore "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," it is unclear to what extent certain other *procedural* provisions of the FAA are applicable to proceedings in the courts of the Virgin Islands. In *World Fresh Mkt. v. P.D.C.M Assocs., SE.*, the Supreme Court of the Virgin Islands held that § 16 of the FAA — providing for interlocutory appeal of

---

[6] *See, e.g., Moore v. HOVENSA, L.L.C.*, 46 V.I. 144, 147-148 (V.I. Super. 2005); *St. Rose v. HOVENSA, L.L.C.*, 46 V.I. 151, 153 (V.I. Super. Ct. 2005); *See also Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362 n.4, 49 V.I. 1133 (3d Cir. 2007); *Wilhelm v. Hovic*, 2009 U.S. Dist. LEXIS 13624, at *8 (D.V.I. 2009).

[7] Alternatively, it is plausible to read the opinions of the Supreme Court of the United States in both *Southland Corp.* and *Allied-Bruce* as endorsing the view that Congress has determined that any state law specifically compromising the enforceability of arbitration clauses imposes, by definition, an impermissible burden on interstate commerce by incentivizing forum shopping — including not only selection of forums for litigation, but also selection of forums to incorporate, headquarter, and operate businesses — between those jurisdictions upholding the enforceability of arbitration agreements and those that do not. *See* 465 U.S. at 16 ("In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements"); 513 U.S. at 281 ("What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent.").

orders denying motions to stay pending arbitration — applied only in federal courts and therefore did not preempt local statutes to the contrary. 2011 V.I. Supreme LEXIS 29, at **6-7 (V.I. 2011). The Court noted that "[w]hile Congress, in enacting the FAA, has clearly adopted a policy favoring arbitration, [t]here is no federal policy favoring arbitration under a certain set of procedural rules." *Id.*, 2011 V.I. Supreme LEXIS 29, at *6 (internal quotations and citations omitted). In *World Fresh*, the Court also echoed the opinion of the Supreme Court of the United States in *Southland Corp. v. Keating*, explaining that "[i]n holding that the [FAA] preempts a state law that withdraws the power to enforce arbitration agreements, we do not hold that §§ 3 and 4 of the [FAA] apply to proceedings in state courts." 2011 V.I. Supreme LEXIS 29, at **7-8 (quoting 465 U.S. at 16 n.10 (1984)).

■ The statute itself states:

> If any suit or proceeding be *brought in any of the courts of the United States* upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). On a narrow reading then, it appears that § 3, by its own terms, applies only to actions brought in the courts of the United States and not to proceedings in state or territorial courts. Thus, evaluating the plain meaning of the statute itself in conjunction with the opinions of the Supreme Court of the Virgin Islands in *World Fresh* and subsequent cases,[8] the Court concludes that § 3 constitutes a procedural provision of the FAA that is not, by its own terms, applicable to proceedings in Virgin Islands courts.

---

[8] 2011 V.I. Supreme LEXIS 29, at **6-7 (holding that § 16 of the FAA constitutes a procedural provision of the FAA and is therefore inapplicable to proceedings in the courts of the Virgin Islands); *see also Allen*, 59 V.I. at 434, 435 (questioning without deciding whether § 12 of the FAA applies in Virgin Islands courts); *Gov't of the V.I. v. Seafarers International Union*, 57 V.I. 649, 656 n.3 (2012) (questioning without deciding whether § 10 of the FAA applies in Virgin Islands courts).

In the absence of any Virgin Islands statutory framework governing arbitration, and particularly in the absence of any Virgin Islands statute mandating a stay of proceedings upon referral of claims to arbitration,[9] it falls to the Court to determine the most appropriate course of action to pursue following referral. Although the Superior Court has routinely stayed proceedings following referral of a Plaintiff's claims to arbitration,[10] different jurisdictions are split as to whether, after compelling *all* of a given Plaintiff's claims to be settled by arbitration, a court may, in its discretion, elect to dismiss the action entirely rather than stay proceedings.[11] While referral procedures predictably vary from state to state based upon the interpretation of each state's individual arbitral statutory framework, even among the federal circuit courts, which are undoubtedly bound to apply § 3 of the FAA, there exists a difference of opinion as to whether judges are vested with the discretion to dismiss rather than stay an action following referral.[12]

---

[9] The vast majority of states have enacted laws, many based upon the FAA, to supplement the FAA or, where some or all of the FAA is not applicable, to provide an independent framework for the governance of arbitral proceedings. *See, e.g.*, DEL. CODE ANN. tit. 10, § 5701 *et seq.* (LexisNexis 2016) (Uniform Arbitration Act); 710 ILL. COMP. STAT. ANN. 5/1 *et seq.* (LexisNexis 2016) (Uniform Arbitration Act); TEX. CIV. PRAC. & REM. CODE, tit. 7 (LexisNexis 2016) (Alternate Methods of Dispute Resolution); N.Y. C.P.L.R. ART. 75 (LexisNexis 2016) (Arbitration); FLA. STAT. ANN. CHAP. 44 (LexisNexis 2016) (Mediation Alternative to Judicial Action).

[10] Often under the assumption that § 3 of the FAA applies and mandates a stay of proceedings. *See, e.g.*, *Valentin v. Grapetree Shores*, 2015 V.I. LEXIS 76, at *4 (V.I. Super. Ct. 2015).

[11] In the event that some, but not all of a given plaintiff's claims are referred to arbitration, it seems clear that dismissal would be inappropriate and that ordering a stay of proceedings would remain the logically preferable course.

[12] *Compare Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001) (permitting dismissal following referral to arbitration); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) (permitting dismissal); and *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635 (9th Cir. 1988) (permitting dismissal), *with Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3d Cir. 2004) (requiring stay following referral to arbitration) and *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953 (10th Cir. 1994) (requiring stay). Thus, even if this Court or later the Supreme Court of the Virgin Islands were to determine that § 3 of the FAA is applicable in the Virgin Islands, there is still significant support for the position that courts may dismiss an action upon referring all claims to arbitration. In terms of statutory construction, those courts concluding that the FAA mandates a stay of proceedings argue simply that the words "shall stay" in § 3 leave no room for discretionary dismissal. *See, e.g.*, *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269-70 (3d Cir. 2004). On the other hand, those courts finding that § 3 permits discretionary dismissal argue that the phrase, "shall stay the trial of the action," applies, by its own terms, only where at least some claims in a given action are

From a policy perspective, courts opposed to discretionary dismissal argue that even once claims have been referred to arbitration, courts still have a role to play in assisting the parties during arbitral proceedings; including ruling on motions concerning selection of the arbitrator, compelling witnesses, or enforcing the arbitrator's decision. *See, e.g., Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269-70 (3d Cir. 2004).[13] Additionally, these courts note that as dismissal constitutes a final judgment, dismissing claims following referral to arbitration allows for immediate appeal, which in turn, they argue, frustrates the stated purpose of the FAA and its state law analogs in promoting prompt and efficient resolution of disputes through arbitration. *Id.*

On the other hand, courts in favor of discretionary dismissal argue that retaining jurisdiction over actions that have been referred, in their entirety, to arbitration would serve no purpose as any post-arbitration remedy sought by parties would "not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc.*, 636 F. Supp. 750, 757-58 (D.P.R. 1986). In fact it is reasonable to infer that retaining jurisdiction might only encourage and provide parties with an opportunity to resort to filing motions in court in the event of a disagreement with the some aspect of the arbitrator's decision, thereby diminishing the role of the arbitrator and delaying resolution of the dispute.

These courts also argue that by providing for immediate appeal of orders compelling arbitration, parties will avoid the significant cost and delay they would otherwise be subject to in the event that the decision to compel arbitration was later reversed. *Id.* at 758. Additionally, any delay in initiating arbitration resulting from the appeal of a dismissal might well be preferable to the potential delay caused by allowing parties to repeatedly resort to the judicial forum to challenge each decision of the arbitrator. In effect, providing a right of immediate appeal allows for

---

not referable to arbitration, because in the event that a court compels arbitration of all claims involved in action there can be no trial to stay. *See* 115 PENN ST. L. REV. 539, 553-54 (2011).

[13] *Lloyd* was decided by the Third Circuit on appeal from an original action in the District Court of the Virgin Islands, rather than on appeal from the Superior Court and the District Court Appellate Division and, as such, does not constitute binding authority in the Superior Court.

increased judicial review of decisions to compel arbitration without interrupting or otherwise disturbing the arbitration process itself.

 Considering these conflicting viewpoints, the Court concludes that the best policy for the Virgin Islands is to permit discretionary dismissal of actions in which *all* claims have been referred to mandatory, binding arbitration. In addition to allowing the Court to more efficiently manage its docket by quickly dismissing cases in which the Court may well have no future involvement,[14] discretionary dismissal furthers the overall policy goal of allowing parties to resolve disputes in the forum of their own choosing while discouraging parties from seeking interlocutory judicial review of an arbitrator's decisions. And lastly, providing an avenue for immediate appeal seems particularly appropriate in the Virgin Islands where, lacking any statutory framework for alternative dispute resolution and having little binding precedent concerning these issues from the Supreme Court, the status of the law concerning applicability of the various subsections of the FAA remains highly uncertain.

██ Here, the Court reiterates the conclusion of its Order entered August 2, 2016 that each of Plaintiff's claims in this action is covered by a valid, mandatory arbitration clause. The determination that, pursuant to the terms of his Employment Agreement, arbitration provides the sole forum in which Plaintiff may seek redress for his employment related claims necessarily leads to the conclusion that the Court's role in the substantive resolution of the dispute between the parties has come to an end. Therefore, the Court finds that the most appropriate course of action is to exercise its inherent power to control its docket to best promote the fair and efficient resolution of the dispute between the parties and, on that basis, dismiss Plaintiff's Complaint.

An Order consistent with this Memorandum Opinion shall enter herewith.

---

[14] Generally, once a matter has been referred, in its entirety to arbitration, there is no action left for the court to take other than, in the event of a party's refusal to comply, to enforce or vacate the award. However, an action to enforce or vacate an arbitration award is separate and distinct from the underlying claims and dismissal of the underlying action in no way impacts a party's ability to bring an action to enforce or vacate. Additionally, discretionary dismissal has the added benefit of providing courts with a means of preventing the occurrence of the unfortunately common scenario in which parties file an action, the court refers the matter to arbitration and enters a stay, and the parties are never heard from again.